**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott T Matthewson, | No. CV-18-03108-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Scott Matthewson's ("Plaintiff") appeal from the Social Security Commissioner's (the "Commissioner") denial of his application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Doc. 1). This matter has been fully briefed by the parties.[1] The Court now rules on Plaintiff's appeal.

## I. BACKGROUND

The parties are familiar with the background information in this case, and it is summarized in the Administrative Law Judge's ("ALJ") decision. (*See* Doc. 8-3 at 19–31). Accordingly, the Court will reference the background only as necessary to the analysis below.

## II. LEGAL STANDARD

The ALJ's decision to deny disability benefits may be overturned "only when the ALJ's findings are based on legal error or not supported by substantial evidence in the

---

[1] (*See* Docs. 9, 11).

record." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citations omitted). "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (citations omitted); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Benton*, 331 F.3d at 1035 ("If the evidence can support either outcome, the Commissioner's decision must be upheld.").

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotations and citations omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. Rather, it is a "fundamental rule of administrative law" that a reviewing court, in dealing with a judgement which an administrative agency alone is authorized to make, may only make its decision based upon

evidence discussed by the agency. *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Thus, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

Similarly, when challenging an ALJ's decision, "issues which are not specifically and distinctly argued and raised in a party's opening brief are waived." *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (citing *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1110 n. 1 (9th Cir. 2000) (en banc), *vacated and remanded on other grounds*, 535 U.S. 391 (2002)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 n. 7 (9th Cir. 2009) (applying the principle to Social Security appeals). Accordingly, the Court "will not manufacture arguments for an appellant." *Arpin*, 261 F.3d at 919 (citation omitted).

## A.    Definition of a Disability

A claimant can qualify for Social Security disability benefits only if he can show that, among other things, he is disabled. 42 U.S.C. § 423(a)(1)(E). A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). A person is disabled only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

## B.    The Five-Step Evaluation Process

The Social Security regulations set forth a five-step sequential process for evaluating disability claims. 20 C.F.R. § 404.1520(a)(4); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at the final step.

*Reddick*, 157 F.3d at 721. The five steps are as follows:

First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.*

At the second step, the ALJ considers whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment, then the claimant is not disabled. *Id.* § 404.1520(c). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine." *Id.* § 404.1521(b). Additionally, unless the claimant's impairment is expected to result in death, "it must have lasted or must be expected to last for a continuous period of at least 12 months" for the claimant to be found disabled. *Id.* § 404.1509.

Third, having found a severe impairment, the ALJ then considers the severity of the claimant's impairment. *Id.* § 404.1520(a)(4)(iii). This requires the ALJ to determine if the claimant's impairment "meets or equals" one of the impairments listed in the regulations. *Id.* If so, then the ALJ will find that the claimant is disabled. *Id.* If the claimant's impairment does not meet or equal a listed impairment, then the ALJ will assess the claimant's "residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record." *Id.* § 404.1520(e). In assessing the claimant's "residual functional capacity" ("RFC"), the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.* § 404.1545(a)(1). A claimant's RFC is the most the claimant can still do despite the effects of all the claimant's medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(1–2).

At step four, the ALJ determines whether, despite his impairments, the claimant can

- 4 -

still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To do this, the ALJ compares the claimant's residual function capacity with the physical and mental demands of the claimant's past relevant work." *Id.* § 404.1520(f). If the claimant can still perform his past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 1520(a)(4)(iv). Otherwise, the ALJ proceeds to the final step.

At the fifth and final step, the ALJ considers whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(g)(1). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(v). However, if the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *Id.* § 404.1520(a)(3). This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See id.* §§ 404.1527; 404.1529.

## C. The ALJ's Evaluation under the Five Step Process

At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2014, the amended alleged onset date. (Doc. 8-3 at 21). In step two, the ALJ ascertained that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical and lumbar spine, obesity, anxiety disorder, and post-traumatic stress disorder." (*Id.*). Under the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of the impairments listed in the Social Security Regulations. (*Id.* at 22).

Before moving on to step four, the ALJ conducted an RFC determination after consideration of the entire record. (*Id.* at 23). The ALJ found that Plaintiff had "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is

able to perform unskilled work requiring no more than occasional interaction with coworkers and supervisors." (*Id.*).

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as a nurse or communications director. (*Id.* at 29). Finally, the ALJ concluded at step five that based on Plaintiff's RFC, age, education, and work experience, Plaintiff could perform a significant number of jobs existing in the national economy. (*Id.* at 30). Consequently, the ALJ concluded that Plaintiff had not been under a disability under the Social Security Act from June 1, 2014 through September 27, 2017—the date of the ALJ's decision. (*Id.* at 31).

## III.    ANALYSIS

Plaintiff asserts that the ALJ's denial of his application for Social Security benefits was not supported by substantial evidence and rests upon an error of law. (Docs. 1 at 2; 9 at 8, 13, 20). Specifically, Plaintiff argues that the Court should reverse and remand the final decision of the Agency because the ALJ failed to articulate legally sufficient reasons for rejecting medical opinions from Plaintiff's treating physicians, (Doc. 9 at 8), and Plaintiff's subjective symptom testimony, (*id.* at 13). Plaintiff also claims the ALJ's determination that Plaintiff could perform the identified occupations at step five of the disability analysis is not supported by substantial evidence. (*Id.* at 20). However, for the reasons set forth below, the final decision of the Commissioner is affirmed.

### A.    Whether the ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physicians

Plaintiff argues that the ALJ failed to articulate specific and legitimate reasons for rejecting the opinions of Dr. Pulido, Dr. Williams, Dr. Delucia, Dr. Moshkovski and, Dr. Castillo—five of Plaintiff's treating physicians. (Doc. 9 at 8).

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). ALJs generally give more weight to medical opinions from treating physicians "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, the opinion of a treating source is generally given more weight than the opinion of a doctor who does not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).

Should the ALJ decide not to give the treating physician's medical opinion controlling weight, the ALJ must weigh it according to factors such as the nature, extent, and length of the physician-patient relationship, the frequency of evaluations, whether the physician's opinion is supported by and consistent with the record, and the specialization of the physician. *Trevizo*, 871 F.3d at 676; *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Although a "treating physician's opinion is entitled to 'substantial weight,'" *Bray*, 554 F.3d at 1228 (citation omitted), it is "not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Batson*, 359 F.3d at 1195. Rather, an ALJ may reject the uncontradicted opinion of a treating physician by stating "clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). Nevertheless, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

Treating physicians may also offer an opinion on the ultimate issue of disability, but as such it is not a "medical opinion." 20 C.F.R. §§ 404.1527(d)(1) ("ultimate issue" opinions include those that a claimant is " 'disabled' or 'unable to work' "), 416.927(d)(1) (same); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("[i]n disability benefits cases such as this, physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work"). Therefore, a treating physician's statement on the ultimate issue of disability, an issue reserved to the Commissioner, is not binding on the ALJ or entitled to special weight. *Id.*; §§ 404.1527(d)(3) (the Commissioner is not required to give "any special significance" to opinions on the ultimate issue of disability), 416.927(d)(3) (same); *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("[t]he law reserves the disability determination to the Commissioner").

As will be explained below, all five of the treating physicians' opinions that Plaintiff argues the ALJ erred in evaluating are contradicted by another doctor's opinion. Accordingly, the Court will evaluate whether the ALJ articulated specific and legitimate reasons supported by substantial evidence for rejecting each of those opinions. *See* Ryan, 528 F.3d at 1198.

### 1. Dr. Pulido's Opinion

In the present case, the ALJ assigned very little weight to the opinion provided by Dr. Pulido, one of Plaintiff's treating physicians. (Doc. 8-3 at 28). Although Plaintiff argues that the ALJ erred by failing to articulate a legally sufficient reason for doing so, (Doc. 9 at 8, 10), the Court finds that the ALJ provided a "specific and legitimate reason" supported by "substantial evidence" for assigning little weight to Dr. Pulido's opinion. *See Ryan*, 528 F.3d at 1198.

On April 18, 2014, Dr. Pulido opined that the claimant was unable to be employed "based on his social impairment causing him difficulties maintaining interpersonal relationships, regulating his mood, making judgments and adjusting to stressful circumstances such as work or work-like environments." (Doc. 8-8 at 54). This opinion differs from the opinion of Dr. Castillo, who stated that Plaintiff was seriously limited but not precluded from working in coordination with others, completing a normal workweek, getting along with coworkers and dealing with normal stress. (Doc. 8-18 at 120–125).

The ALJ gave Dr. Pulido's opinion very little weight because it was "inconsistent with the objective medical record as a whole" and because Dr. Pulido "failed to set forth details in her report of the objective medical evidence she relied upon in rendering her opinions." (Doc. 8-3 at 27–28).

Inconsistency between a physician's opinion and objective medical findings constitutes a "specific and legitimate reason" for rejecting the contradicted opinion of a treating physician. *See Valentine v. Comm'r*, 574 F.3d 685, 692–93 (9th Cir. 2009); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (holding that the ALJ's rejection of a treating physician's opinion because the medical records were inconsistent with the limitations set forth in that physician's opinion constituted a "specific and legitimate reason" for discrediting that opinion); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion."); SSR 06-03P, 2006 WL 2329939, at *4 (Aug. 9, 2006).

The ALJ detailed the medical evidence and clinical findings from 2014 through the date of the hearing and then evaluated medical opinions based on whether they were consistent with the medical record. (Doc. 8-3 at 23–29). In his decision, the ALJ described the medical evidence and determined that the medical record did not support the social limitations identified by Dr. Pulido. (*Id.*).

For example, although Plaintiff alleged disability because of an anxiety disorder and post-traumatic stress disorder, the ALJ noted that at the hearing Plaintiff stated he was able to attend church and socialize in a normal manner. (*Id.* at 24–25). Furthermore, the ALJ

noted that mental status examinations showed Plaintiff was alert, oriented, polite, and cooperative. (*Id.* at 25). The examinations also showed that Plaintiff's mood was good, his speech regular, his concentration intact, and his thought processes clear. (*Id.*). The ALJ also noted that in December 2015, Plaintiff reported he was doing well and had improved relationship satisfaction. (*Id.* at 26). These findings are inconsistent with Dr. Pulido's opinion that Plaintiff could not be employed due to his social impairments and instead indicate that "he is not as limited as she opined." (*Id.* at 28). Thus, the ALJ afforded her opinion very little weight. (*Id.*).

The ALJ also afforded very little weight to Dr. Pulido's opinion because "she failed to set forth details in her report of the objective medical evidence that she relied upon in rendering her opinions." (Doc. 8-3 at 27). "[A]n ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (citing *Matney*, 981 F.2d at 1019). Dr. Pulido's written letter was sent to document that Plaintiff participated in a residential recovery program and is not a medical source evaluation. (Doc. 8-8 at 54). Dr. Pulido's statement is merely five sentences long, does not cite any records, and remarks that Plaintiff "is unable to be employed based on his social impairment." (*Id.*). Dr. Pulido's letter fails to specify what Plaintiff's social impairment is or what Plaintiff is able or unable to do, and the ultimate determination of disability is "an issue reserved to the Commissioner." SSR 96-8P, 1996 WL 374184, at *7 n. 8 (July 2, 1996). Therefore, the ALJ properly noted that Dr. Pulido "failed to set forth details in her report of the objective medical evidence she relied upon in rendering her opinion." (Doc. 8-3 at 27). Accordingly, the Court finds that the ALJ articulated specific and legitimate reasons based on substantial evidence for assigning very little weight to the opinion of Dr. Pulido.

### 2. Dr. Williams' Opinion

The ALJ also assigned very little weight to the opinion provided by Dr. Williams. (Doc. 8-3 at 27–28). Although Plaintiff argues that the ALJ erred by failing to articulate a legally sufficient reason for doing so, (Doc. 9 at 8, 10), the Court finds that the ALJ

provided a "specific and legitimate reason" supported by "substantial evidence" for assigning little weight to Dr. Williams' opinion. *See Ryan*, 528 F.3d at 1198.

On September 24, 2015, Dr. Williams opined that Plaintiff was precluded from seeking, attaining and maintaining employment because of his PTSD symptoms including nightmares, irritability, poor sleep, emotional numbing, depressed and anxious mood states, and hypervigilance. (Doc. 8-16 at 96). The ALJ afforded this opinion very little weight for the same reasons as Dr. Pulido's, namely that it is inconsistent with the objective medical record and unsupported by detailed findings. (Doc. 8-3 at 27–28). Dr. Williams' opinion also differs from Dr. Castillo's opinion that Plaintiff was not precluded from completing a normal workday and workweek, performing at a consistent pace, and dealing with normal stress. (Doc. 8-18 at 120–125).

Prior to discussing Dr. Williams' opinion, the ALJ noted the mental status examinations of Plaintiff show that his affect was full, that he was pleasant, and had calm and cooperative behavior. (Doc. 8-3 at 25). Further, the examinations showed Plaintiff did not have any psychosis or manic symptoms and that his thought processes were coherent, logical and goal directed. (*Id.*). The ALJ also noted that Plaintiff testified his health impairments were exacerbated by his past use of alcohol. (*Id.* at 26). The ALJ found that the medical evidence indicated that Plaintiff's mental health impairments were not as severe as he alleged. (*Id.*). After detailing this evidence and reaching his conclusion, the ALJ found that the opinion of Dr. Williams, that Plaintiff was precluded from working, was not consistent with the objective medical record as a whole. (*Id.* at 28).

Additionally, the ALJ noted that Dr. Williams' opinion is unsupported by any detailed findings. (*Id.*). Dr. Williams' opinion is only five sentences long and does not cite any records and merely determines that Plaintiff is precluded from seeking, attaining and maintaining employment, "an issue reserved to the Commissioner." (Doc. 8-16 at 96); SSR 96-8p at *7 n. 8. Accordingly, the Court finds that the ALJ articulated specific and legitimate reasons based on substantial evidence for assigning very little weight to the opinion of Dr. Williams.

### 3. Dr. Delucia's Opinion

The ALJ assigned partial weight to the opinion provided by Dr. Delucia. (Doc. 8-3 at 27). Although Plaintiff argues that the ALJ erred by failing to articulate a legally sufficient reason for doing so, (Doc. 9 at 8, 10), the Court finds that the ALJ provided a "specific and legitimate reason" supported by "substantial evidence" for assigning partial weight to Dr. Delucia's opinion. *See Ryan*, 528 F.3d at 1198.

On March 30, 2017, Dr. Delucia completed a medical source statement in which he opined that Plaintiff could walk for a few minutes at a time, could sit for one hour at a time and could stand for two hours at a time. (Doc. 8-18 at 112–115). Dr. Delucia also opined that Plaintiff could sit, stand and/or walk for at least six hours in an eight-hour workday, that Plaintiff would need four unscheduled breaks a day for ten minutes at a time and that Plaintiff would be off task fifteen percent of the workday and would miss about a day of work per month. (*Id.*). Dr. Delucia's opinion differs from the opinions provided by state agency consultants Dr. Karelitz and Dr. Cureg, who opined that Plaintiff's physical impairments were non-severe. (Doc. 8-4 at 9, 18, 30).

The ALJ stated that he was assigning partial weight to Dr. Delucia's opinion because, although it was "mostly consistent with the objective medical evidence as a whole," the objective physical examinations and imaging of Plaintiff "indicated that he was not as limited as [Dr. Delucia] opined." (Doc. 8-3 at 27). The ALJ also noted that Dr. Delucia indicated he only treated Plaintiff once a year. (*Id.*).

The ALJ is required to consider the length of the treatment relationship between the physician and the claimant in determining how much weight to afford the treating physician's medical opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014). Accordingly, the ALJ properly noted that Dr. Delucia indicated that he only treated Plaintiff once a year as a reason for affording the opinion only partial weight. (Doc. 8-3 at 27); (*See* Doc. 18-8 at 62).

The ALJ also detailed the medical evidence as it pertained to Plaintiff's physical impairments and then evaluated Dr. Delucia's opinion based on whether it was consistent

with that evidence. (Doc. 8-3 at 24–27). The ALJ noted that Plaintiff indicated he could walk up to two miles before needing a break. (*Id.* at 24). The ALJ also noted that in January 2017, an examination showed Plaintiff had some reduced range of motion in his cervical spine but it was non-tender and no muscle spasm was noted. (*Id.*). The ALJ further noted that Plaintiff had full range of motion in all planes and had 5/5 motor strength in his upper and lower extremities. (*Id.*). Imaging of Plaintiff's lumbar spine and cervical spine revealed only mild to moderate degenerative changes and the X-rays of Plaintiff's shoulder were essentially normal. (*Id.*). These findings do not fully support the limitations identified by Dr. Delucia. Accordingly, the Court finds that the ALJ gave specific and legitimate reasons based on substantial evidence for assigning Dr. Delucia's opinion partial weight.

### 4. Dr. Moshkovski's Opinion

The ALJ assigned little weight to the opinion of Dr. Moshkovski. (Doc. 8-3 at 26). Although Plaintiff argues that the ALJ erred by failing to articulate a legally sufficient rationale for doing so, (Doc. 9 at 8, 10), the Court finds that the ALJ provided a "specific and legitimate reason" supported by "substantial evidence" for assigning little weight to Dr. Moshkovski's opinion. *See Ryan*, 528 F.3d at 1198

On April 4, 2017, Dr. Moshkovski completed a medical source statement in which she opined that Plaintiff could rarely lift and carry ten pounds, and that Plaintiff has significant limitations with reaching, handling and fingering. Dr. Moshkovski also opined that Plaintiff only could stand for an hour at a time, and sit for 20 minutes at a time. (Doc. 8-18 at 116–119). The ALJ assigned little weight to the opinions of Dr. Moshkovski "as they are inconsistent with the objective medical record as a whole" and "specifically the objective physical examinations and imaging" (Doc. 8-3 at 26). Dr. Moshkovski's opinion also differs from the opinions provided by state agency consultants Dr. Karelitz and Dr. Cureg, who opined that Plaintiff's physical impairments were non-severe. (Doc. 8-4 at 9, 18, 30).

As noted above, the ALJ explained that imaging of the Plaintiff's lumbar and cervical spine revealed only mild to moderate degenerative changes and the imaging of his

left shoulder was essentially normal. (Doc. 8-3 at 26). Plaintiff reportedly had 5/5 motor strength in upper and lower extremities and had full range of motion in all planes. (*Id.* at 24). Plaintiff also did not have any tenderness to palpation of his spine. (*Id.*). These findings are inconsistent with the significant limitations identified by Dr. Moshkovski. Furthermore, at the hearing Plaintiff stated he could lift between 50 and 100 pounds. (*Id.* at 26). This evidence is inconsistent with Dr. Moshkovski's opinion that Plaintiff could rarely lift and carry ten pounds. The ALJ also noted that Dr. Moshkovski indicated that she had only seen the claimant twice before rendering her opinion. (*Id.*); (*See* Doc. 9 at 11); (Doc. 8-18 at 116). Furthermore, Dr. Moshkovski's opinion on the severity of Plaintiff's limitations differs from Dr. Delucia's opinion. (Doc. 8-18 at 116–119)*; c.f.* (Doc. 8-18 at 112–115). Accordingly, the Court finds that the ALJ articulated specific and legitimate reasons supported by substantial evidence for assigning Dr. Moshkovski's opinion little weight.

### 5.    Dr. Castillo's Opinion

The ALJ assigned very little weight to the opinion of Dr. Castillo. (Doc. 8-3 at 26–27). Although Plaintiff argues that the ALJ erred by failing to articulate a legally sufficient rationale for doing so, (Doc. 9 at 8, 10), the Court finds that the ALJ provided a "specific and legitimate reason" supported by "substantial evidence" for assigning little weight to Dr. Castillo's opinion. *See Ryan*, 528 F.3d at 1198

On April 4, 2017 Dr. Castillo submitted a medical source statement stating that Plaintiff was seriously limited but not precluded from remembering work-like procedures, working in coordination with others, understanding and remembering detailed instructions, dealing with stress, and maintaining socially appropriate behavior. (Doc. 8-18 at 120–125). Dr. Castillo further opined that Plaintiff was limited in is ability to adhere to basic standards of neatness and cleanliness. (Doc. 8-18 at 123). This differs from the opinions of state agency consultants Dr. Kotler and Dr. Schumacher, who opined that Plaintiff was able to sustain adequate attention and concentration to complete simple and some detailed tasks in a work setting and that Plaintiff was not significantly limited in his ability to get along with

coworkers or adhere to basic standards of neatness and cleanliness. (*See* Doc. 8-4 at 14–15, 34–36).

The ALJ gave very little weight to the opinion of Dr. Castillo because it was "inconsistent with the medical records as a whole," specifically Plaintiff's mental status examinations, and because "Dr. Castillo did not support his opinions with any details or indicated the objective medical evidence he relied upon in rendering his opinions." (Doc. 8-3 at 27). In evaluating the medical evidence, the ALJ noted that Plaintiff's grooming was within normal limits and, in fact, Plaintiff reportedly had good hygiene and grooming. (*Id.* at 25). This evidence is inconsistent with Dr. Castillo's opinion that Plaintiff was limited in his ability to adhere to basic standards of neatness and cleanliness. The ALJ also noted that Plaintiff's thought processes were found to be organized, linear, coherent, logical and goal-directed and his concentration was noted to be intact. (*Id.* at 25). Mental status examinations also showed that Plaintiff had good recall of recent and distant past events. (*Id.*). This evidence is inconsistent with the memory limitations identified by Dr. Castillo.

Further, much of Dr. Castillo's opinion is in the form of a checklist and thus the ALJ found that it did not provide "any details or indicated the objective medical evidence he relied upon in rendering his opinions." (Doc. 8-3 at 27). Conclusory opinions "in the form of a check-list" lack "substantive medical findings" and, as a result, do not provide objective medical evidence to support the treating physician's conclusion. *See Batson*, 359 F.3d at 1195 (finding the ALJ properly gave minimal weight to treating physician's opinion partly because it was unsupported by objective medical evidence). Accordingly, the Court finds that the ALJ articulated specific and legitimate reasons supported by substantial evidence for assigning Dr. Castillo's opinion little weight.

Because the ALJ articulated specific and legitimate reasons for not giving the opinions of the five physicians controlling weight, the Court finds that that the ALJ did not err is his evaluation of the medical opinion evidence.

### B. Whether the ALJ Properly Evaluated Plaintiff's Subjective Symptom Testimony

Plaintiff also argues that the ALJ erred by failing to articulate clear and convincing reasons for rejecting Plaintiff's subjective symptom testimony. (Doc. 9 at 13). Plaintiff specifically argues that the ALJ erred by solely rejecting Plaintiff's testimony due to inconsistency with objective medical evidence. (Doc. 9 at 18).

An ALJ must engage in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison v. Colvin*, 759 F.3d, 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). At this step, a claimant is not required to show "that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom." *Id.* (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Additionally, a claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id.*

Second, if the claimant satisfies the first step of the analysis, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1014–15 (quoting *Smolen*, 80 F.3d at 1281). "Unless an ALJ makes a finding of malingering based on affirmative evidence thereof, [the ALJ] may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins*, 466 F.3d at 883; *see Lingenfelter*, 504 F.3d at 1036. The ALJ may not fulfill this requirement by making general findings; "rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "The clear and convincing standard is the most demanding requirement in Social Security cases." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002).

In assessing a claimant's credibility, an ALJ may consider a range of factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284). Other factors that an ALJ may consider when determining the credibility of a claimant's symptoms include: the location, duration, frequency, and intensity of other symptoms; factors that precipitate and aggravate the symptoms; medications taken and treatments received for symptom relief; any other measures for symptom relief; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* SSR 16-3P, 2017 WL 5180304, at * 7–8 (Oct. 25, 2017). The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Doc. 8-3 at 25). The ALJ found, however, that the "intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical evidence and other evidence in the records," specifically Plaintiff's activities of daily living, objective physical examinations and mental status examinations. (*Id.* at 25–26).

### 1. Daily Activities

The Ninth Circuit has repeatedly held it is appropriate to consider a claimant's daily activities as a factor in assessing a claimant's subjective symptom testimony. *See Revels*, 874 F.3d at 667–68; *see also* SSR 16-3P at *7–8. While the Social Security Act "does not require that claimants be utterly incapacitated to be eligible for benefits," *Smolen*, 80 F.3d at 1284 n.7, an "ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work

setting." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citation omitted). Moreover, even if the daily activities undertaken by the claimant "suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* (citing *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1225 (9th Cir. 2010)).

The ALJ contrasts Plaintiff's statements that he is able to attend church and socialize in a normal manner with his alleged disability because of an anxiety disorder and post-traumatic stress disorder. (Doc. 8-3 at 24–25). Plaintiff also indicated in his function report, which the ALJ referenced, that he goes outside every day, shops in stores, drives a car, spends time talking with others on the phone and at his house, and plays with his children and dogs. (Doc. 8-7 at 26–30). Further, during the hearing in front of the ALJ, Plaintiff stated that he was able to be in crowds, even though he does not like to be. (Doc. 8-3 at 127). The ALJ could reasonably conclude that the ability to be around and socialize with others, in places such as a store or church, could transfer to a work-like environment, especially a position with only occasional interaction with coworkers and supervisors and no interaction with the general public. (Doc. 8-3 at 132). Therefore, the ALJ provided a clear and convincing reason for discounting Plaintiff's testimony about the severity and intensity of his mental health symptoms. *See Molina*, 674 F.3d at 1112–13 ("The ALJ could reasonably conclude that [the claimant's] activities, including walking her two grandchildren to and from school, attending church, shopping, and taking walks, undermined her claims that she was incapable of being around people without suffering from debilitating panic attacks."); *Lori S. v. Berryhill*, No. CV-17-1267-SI, 2018 WL 4742511, at *5 (D. Or. Oct. 2, 2018) (finding proper the ALJ's recitation of Plaintiff's ability to use public transportation, exercise at a community pool, shop in stores, and attend church as well as bible study to support rejecting Plaintiff's alleged cognitive and social problems).

The ALJ also noted, with respect to Plaintiff's claim that he is unable to work due to his back pain, hip pain and tinnitus, that Plaintiff testified that he could lift between 50

and 100 pounds, went to the gym a lot and was trying to build up musculature. (Doc. 8-3 at 26). In his function report, Plaintiff reports being able to cook meals, clean, do laundry, dishes, pick up after his dog and pull weeds. (Doc. 8-7 at 27–30). Plaintiff engages in a number of daily home activities and these home activities indicate that he can move around and perform light physical tasks. The ALJ could reasonably view those skills as transferable to a work-like setting. Here, even though Plaintiff stated that he had difficulty functioning, the ALJ properly discounted the credibility of Plaintiff's subjective symptom testimony to the extent Plaintiff's daily activities were inconsistent with an inability to work in any capacity. *See*, e.g., *Molina*, 674 F.3d at 1113 ("[An] ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[,] [e]ven where those activities suggest some difficulty functioning . . ." (citations omitted)); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries ... may be seen as inconsistent with the presence of a condition which would preclude all work activity" (citations omitted)). Thus, the ALJ articulated a clear and convincing reason based on Plaintiff's activities for discounting Plaintiff's subjective symptom testimony.

## 2. Objective Support

The ALJ also found that Plaintiff's subjective symptom testimony was inconsistent with objective physical examinations, imaging and Plaintiff's history of medical treatment. (Doc. 8-3 at 25). With respect to Plaintiff's mental health symptoms, the ALJ pointed to the mental status examinations, which have been discussed above, *see supra* Part II(a)(1,2), and specifically the report by Plaintiff stating that he was doing well and had improved relationship satisfaction. (*Id.* at 25–26). The ALJ acknowledged that Plaintiff had some workplace limitations but that they were taken into account in the residual functional capacity. (*Id.* at 26).

With respect to physical impairments, the ALJ noted that imaging of Plaintiff's lumbar and cervical spine revealed only mild to moderate degenerative changes and the

imaging of his shoulder was essentially normal. (*Id.* at 26). There was no tenderness to palpation in his spine, deep tendon reflexes of his bilateral upper extremities were normal and his spine was non-tender and no spasm was noted. (*Id.* at 24). Upon reviewing the evidence, the ALJ found "the corresponding objective physical examinations of the claimant revealed primarily subjective complaint of pain weakness with only minimal objective physical findings. (*Id.* at 26). Therefore, the ALJ properly found evidence in the medical record that Plaintiff's symptoms were not as limiting as he alleged.

### 3. Other Factors

When determining the credibility of a claimant's symptoms an ALJ may consider factors that precipitate and aggravate Plaintiff's symptoms. *See* SSR 16-3P, 2017 WL 5180304, at *7–8. Here, the ALJ noted factors that precipitated and aggravated Plaintiff's symptoms: smoking cigarettes and past consumption of alcohol. (Doc. 8-3 at 26). The ALJ noted Plaintiff smokes cigarettes despite their negative impact on his spinal impairments and Plaintiff used to drink alcohol, which exacerbated his mental health impairments. (*Id.*).

An ALJ may also consider other factors in determining the credibility of a plaintiff's subjective symptom testimony. *Ghanim*, 763 F.3d at 1163. The ALJ noted that Plaintiff claims he is only able to stand for only a few minutes at a time. (*Id.* at 24). This is in contrast to Dr. Delucia's opinion that he could stand for two hours at a time, (Doc. 8-18 at 113), as well as Dr. Moshkovski's opinion that he could stand for an hour at a time, (Doc. 8-18 at 117). In his disability application, Plaintiff stated that he has trouble lifting weight. (Doc. 8-3 at 24). However, at the hearing before the ALJ Plaintiff testified that he could lift between 50 and 100 pounds. (*Id.* at 26). It is the ALJ's duty to evaluate evidence, resolve ambiguities and determine credibility. *See Andrews*, 53 F.3d at 1039. Here, the ALJ evaluated the evidence and credibility of Plaintiff's testimony and determined based on clear and convincing evidence that Plaintiff's symptoms were not as limiting as he alleged. (Doc. 8-3 at 23–26). Thus, the ALJ did not error in rejecting Plaintiff's subjective symptom testimony.

## C. Whether the ALJ Properly Found that Plaintiff Could Perform Other Work Existing in the National Economy

The Court next turns to Plaintiff's argument that the ALJ erred at step five of the sequential evaluation by failing to resolve an alleged conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"). (Doc. 9 at 20). Specifically, Plaintiff claims that, according to the descriptions in the DOT, the jobs identified by the VE are incompatible with Plaintiff's RFC, which limits him to light unskilled work requiring no more than occasional interaction with coworkers and supervisors and no interaction with the general public. (*Id.*).

"At step five of the sequential evaluation for disability, the Commissioner bears the burden of proving that the SSI claimant can perform other work in the national economy, given the claimant's RFC, age, education, and work experience." *Gonzales v. Colvin*, No. CV-12-01068-AA, 2013 WL 3199656, at *3 (D. Or. June 19, 2013) (citations omitted). When determining whether a claimant can perform other work, "the best source for how a job is generally performed" in the national economy is usually the DOT. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (citations omitted). However, "[t]he DOT is not the sole source of admissible information concerning jobs." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (quotation omitted). Rather, the ALJ may also rely on testimony from a VE, even if the VE's testimony on job traits varies from the DOT classification. *Id.* However, before relying on VE testimony about the requirements of a particular occupation, "the ALJ must [first] ask the VE if his or her testimony is consistent with the DOT." *Wentz v. Comm'r of Soc. Sec. Admin.*, 401 Fed. Appx. 189, 191 (9th Cir. 2010) (citing *Massachi v. Astrue*, 486 F.3d 1149, 1152–53 (9th Cir. 2007)).

Not all potential conflicts between a vocational expert's testimony and the DOT's "maximum requirements" for an occupation will be apparent or obvious and "an ALJ need only follow up on those that are." *Gutierrez v. Colvin*, 844 F.3d 804, 807–08 (9th Cir. 2016). However, if "there is an apparent unresolved conflict between VE . . . evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on

the VE . . . evidence to support a determination or decision about whether the claimant is disabled." SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000). Accordingly, an "ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435. For example, a reasonable explanation for such conflict might include "[i]nformation about a particular job's requirements or about occupations not listed in the DOT...from a VE's...experience in job placement or career counseling." SSR 00-4P at * 2.

Here, the VE testified that Plaintiff would be able to perform jobs existing in the national economy, specifically Plaintiff could work as an office helper, assembly worker or mail clerk. (Doc. 8-3 at 133). The VE stated that his testimony was consistent with the DOT. (*Id.*). The Court does not find that there is a direct apparent conflict between the DOT and the VE's testimony. Plaintiff does not cite the DOT to show that any of the jobs listed by the VE are not unskilled or require more than occasional interaction with coworkers or supervisors.[2] (*See* Doc. 9 at 20–23). Rather, in support, Plaintiff points to descriptions of these jobs contained in the Occupational Information Network ("O*Net"). (*Id.*). Plaintiff's reliance on O*Net is misplaced and the appropriate reference is to the Dictionary of Occupational Titles. *See Valentin v. Berryhill*, No. CV-17-944-DFM, 2018 WL 4300119, at *10 (D. Conn. Sept. 9, 2018) (citing *Ryan v. Astrue*, 650 F. Supp. 2d 207, 218 (N.D.N.Y. 2009)). "Even if the VE's testimony was in conflict with O*Net, there is no requirement that the VE's testimony comply with that database," the "VE's testimony [only] must comply with the DOT." *Ryan*, 650 F. Supp. 2d at 218; *See also* SSR 00-4P at *2 ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy."). The ALJ had no duty to take administrative notice of the O*Net database and then use information from that source to compare it to the DOT or the VE's

---

[2] The Court searched for DOT number 726.684-022, assembly worker, on Westlaw, Lexis Advance and O*Net and was unable to determine whether the job of an assembly worker has an SVP of 2 or 3. Because the VE and ALJ listed two other occupations Plaintiff could perform, the Court finds that this error was harmless and would not have impacted the ALJ's determination that jobs exist in the national economy which Plaintiff could perform. *See Molina*, 674 F.3d at 1115–22 (9th Cir. 2012).

testimony. *Wagner v. Berryhill*, No. CV-17-5698-AS, 2018 WL 3956485, at *6 (C.D. Cal. Aug. 14, 2018) ("The ALJ had no obligation to address the VE's testimony from other sources such as O*NET"); *Vizcarra v. Berryhill*, No. CV-16-01736-DFM, 2018 WL 1684315, at *3 (C.D. Cal. Apr. 5, 2018). Accordingly, the ALJ did not error in relying on the VE's testimony in determining that there existed jobs in the national economy which Plaintiff could perform.

**IV.    CONCLUSION**

For the reasons stated above,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is AFFIRMED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 28th day of August, 2019.

_____
James A. Teilborg
Senior United States District Judge